**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**

**PENN-STAR INSURANCE COMPANY,**

   **Plaintiff,**         **CASE NO. 2:23-cv-00166-DCR**

**vs.**

               **JUDGE: Danny C. Reeves**

**ARAL, INC d/b/a THE BRASS BULL,**
**et. al.,**

   **Defendants.**

_____/

**DEFENDANTS ARAL, INC. d/b/a THE BRASS BULL, ARMINA LEE AND**
**ROGER PETERSEN MOTION TO DISMISS AND**
**INCORPORATED MEMORANDUM OF LAW**

Comes now, Defendants, ARAL, INC. d/b/a THE BRASS BULL, ARMINA LEE AND

ROGER PETERSEN, by and through Counsel, pursuant to the Federal Rules of Civil Procedure,

hereby moves this court to decline to exercise its discretion to consider this matter under the

Declaratory Judgment Act, 28 U.S.C. § 2201(a), dismiss this case without prejudice, and order that

this case proceed with a declaratory judgment action in the state court. In support thereof,

Defendants state as follows:

**Relevant Facts**

The facts related to this motion are undisputed. This declaratory judgment case was filed

on December 4, 2023, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil

Procedure, for the purpose of determining the applicability of an insurance policy ("Insurance

Policy"), attached as Exhibit A to the Complaint for Declaratory Judgment. Plaintiff PENN-STAR

INSURANCE COMPANY ("Penn-Star" or "Plaintiff") issued the Insurance Policy to Defendants,

Aral, Inc. dba The Brass Bull, Armina Lee, and Roger Petersen (collectively "Defendants"). After

2:19-cv-00166-WOB-CJS

a tragic event leading to the death of Joseph Richter, Jr., a lawsuit was filed on November 3, 2023, against Defendants in the Campbell County, Kentucky Circuit Court, Case No. 23-CI-00984 (the "State Court Lawsuit"). *See State Court Lawsuit Complaint*, attached as Exhibit B to the Complaint for Declaratory Judgment. Penn-Star seeks a declaratory judgment from this Court as to whether it has a duty to defend against the State Court Lawsuit or indemnify any judgment entered in the State Court Lawsuit. For the reasons stated herein, this Court should follow lengthy precedent in declining to exercise its discretion to adjudicate this matter.

### Authority and Application

The United States Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241, 73 S. Ct. 236, 97 L. Ed. 291 (1952)). The Court is "under no compulsion to exercise that jurisdiction." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008)(quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942)).

The 6th Circuit meticulously outlined the analytical process applicable in such cases, to determine whether the Court should choose to exercise its discretion:

> We have repeatedly held in insurance coverage diversity cases that "declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court." *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986). Further, "such actions . . . should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem. Otherwise confusing problems of scheduling, orderly presentation of fact issues and *res judicata* are created." *Id.*; *see also Scottsdale Ins.* Co., 211 F.3d 964; *Omaha Property and Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991); *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 278-79 (6th Cir. 1990); *Grand Trunk W.R. Co. v. Consolid. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). That is not to say that there is a per se rule against exercising jurisdiction in actions

[*813] involving insurance coverage questions. *See Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987); *State Farm Fire and Cas. Co. v. Odom*, 799 F.2d 247, 250 (6th Cir. 1986). Nevertheless, the factual and procedural postures of this case make exercise of jurisdiction particularly inappropriate.

*Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812-13 (6th Cir. 2004).

In *Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323 (6th Cir. 1984), the Sixth Circuit identified five factors for courts to consider in determining whether to exercise jurisdiction over a declaratory judgment action: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*"; (4) whether the use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *Id.* at 326. Subsequent cases confirm that these five factors should be considered to determine if the Court should exercise its discretion in an insurance declaratory judgment action. *Allstate Ins. Co. v. Renou*, 32 F. Supp. 3d 856, 865 (E.D. Mich. 2014); *Bituminous Cas. Corp.*, 373 F.3d 807, 812-13 (6th Cir. 2004); *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 277 (6th Cir. 1990).

Consistent with the principles enunciated by the Supreme Court, in a series of cases dating back to at least 1984, the Sixth Circuit has repeatedly found that when a state action is pending or when trial has been completed in a state court, generally that court is in a better position than a federal district court to decide an insurance declaratory judgment action that involves underlying factual issues. *Renou*, 32 F. Supp. 3d at 865. The factors shall be discussed in turn.

## 1) WHETHER THE JUDGMENT WOULD SETTLE THE CONTROVERSY

There is a split within the Sixth Circuit as to the meaning of "controversy" in these analyses

and the Sixth Circuit provided a detailed summary of the applicable caselaw:

> Two lines of precedent seem to have developed in our jurisprudence regarding consideration of this first factor in the context of an insurance company's suit to determine its policy liability. One set of cases has concluded that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action. *See West Am. Ins. Co. v. Prewitt*, 208 F. App'x 393, 396 (6th Cir. 2006) (unpublished); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003) ("[W]hile the declaratory judgment would not end the dispute between Cailu and Stewart, it would settle the controversy regarding the scope of insurance coverage issued by Northland to Cailu, and whether Northland had a duty to defend the insureds."); *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987) ("The grant of declaratory relief in insurance coverage cases undoubtedly settles the controversy over the insurer's liability to provide a defense for and/or indemnify its insured, thus clarifying the legal relations in issue."); *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986).
>
> A different group of cases, however, has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court. *See Travelers*, 495 F.3d at 272 ("Granting the declaratory relief sought by Evanston and Travelers settles the scope of the insurance coverage under the respective policies and clarifies their obligation to defend Bowling Green in the state court action, but it does nothing to 'clarify the legal relationship' between the other parties."); *U.S. Fire Ins. Co. v. Abex Aluminum, Inc.*, 161 F. App'x 562, 565 (6th Cir. 2006) (unpublished); *Bituminous*, 373 F.3d at 814; *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991); *Odom*, 799 F.2d at 251 (Merritt, J., dissenting) ("[D]eclaratory judgment actions seeking an advance opinion on indemnity issues are rarely helpful when there is an ongoing action in another court. . . . Such actions seldom resolve the entire dispute among the parties and they create confusion among courts as to schedules, orderly resolution of factual disputes and *res judicata*."); *Grand Trunk*, 746 F.2d at 326 ("The instant action does not involve an independent dispute because it arises from and affects a pending Illinois lawsuit. It would not clear up the legal issues in that case.").
>
> The difference between these lines of cases appears to rest on the competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible. However, the contrary results in these cases might also be explained by their different factual scenarios. In *Bituminous*, for example, the insurance company sought a declaration that it was not required to defend or indemnify the defendant in a state court action based on a logging accident which injured one of its employees. 373 F.3d at 808. In evaluating this first discretionary factor, we focused on the fact that the insurance coverage controversy rested on a fact-based question of state law regarding whether [*556] the plaintiff in the state action was actually an employee of the

2:19-cv-00166-WOB-CJS

defendant. *Id.* at 813. We noted that the question of employment status was already being considered in two separate state court proceedings. *Id.* We also registered our concern that the plaintiff in the state tort action "was not made a party to the declaratory judgment action [and thus] any judgment in the federal court action would not be binding as to him and could not be res judicata in the tort action." *Id.* at 814. Considering these facts, we found that "a declaration of insurance coverage would not resolve the controversy." *Id.*

In *Northland* we did not face similarly troubling facts. The plaintiff in that case sought a declaration of no duty to defend or indemnify the insured title company against a title insurance underwriter's state court claims for embezzlement and conversion. 327 F.3d at 449. In determining that the exercise of jurisdiction was proper, we noted that the plaintiff "was not a party to the state court action and neither the scope of the insurance coverage nor the obligation to defend was before the state court." *Id.* at 454. We relied on these facts to find that a declaratory judgment would resolve the insurance coverage controversy and would clarify the legal relations at issue. *Id.*

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555-56 (6th Cir. 2008). In *Flowers*, the case was analogous to *Northland* in that it was a legal analysis, not a factual one, and the state court case did not include the necessary parties to make such a determination. Here, however, the case is analogous to *Bituminous* in that an intense factual determination would have to be performed by this Court to determine if any of the policy exclusions are applicable. Specifically, Penn-Star points to six clauses within the Insurance Policy showing that insurance coverage is not applicable. *See Complaint for Declaratory Judgment*, ¶ 6. These Insurance Policy provisions include (a) the Assault or Battery exclusion; (b) the Firearms and Other Weapons exclusion; (c) the endorsement titled: Exclusion - Injury to Employees, Workers or Contracted Persons of Insureds or Contracted Organizations; (d) the workers' compensation exclusion; (e) the punitive damages exclusion; and (f) Mr. Richter's bodily injury was not caused by an "occurrence" as defined in the policy. *See Insurance Policy*, Exhibit A to the Complaint for Declaratory Judgment.

In order to determine if the scope of the Insurance Policy coverage includes the facts relating to the State Court Lawsuit, a Court would be required to scrutinize the policy language,

assess the specific circumstances outlined in the State Court Lawsuit, and interpret the contractual terms and provisions to ascertain the extent of coverage provided by the Insurance Policy. This comprehensive examination would involve a careful analysis of the Insurance Policy's terms, conditions, exclusions, and any relevant legal precedents to establish the applicability of coverage to the factual elements presented in the State Court Lawsuit. Largely at issue, it appears at this beginning stages of the case, are the events leading up to the shooting of Joseph Richter, Jr., and the status of Joseph Richter, Jr., since he was an employee of the neighboring business, Huddle's Café, and not an employee of Aral, Inc., but was "directed" to assist with an "unruly group of customers." *See State Court Lawsuit Complaint*, attached as Exhibit B to the Complaint for Declaratory Judgment, ¶¶ 12-13. The circumstances surrounding who provided such direction and the nature of the employment relationship will require a nuanced exploration to determine the pivotal factors influencing Joseph Richter, Jr.'s involvement. This entails a careful examination of the dynamics of the situation, including the directives given to him, the nature of his role in addressing the "unruly group of customers," and the overarching employment relationship. Untangling the intricacies of these circumstances is crucial for the court to ascertain whether Joseph Richter, Jr.'s actions fall within the purview of coverage outlined in the Insurance Policy. Such scrutiny will extend to discerning the responsibilities assigned to him, the authority under which he acted, and any relevant contractual or employment agreements that might shed light on the nature of his involvement in the events leading to the State Court Lawsuit. The State Court Lawsuit must also make these determinations in its ultimate adjudication of the matter. However, all parties are involved in both this matter and the State Court Lawsuit so that element is not present here.

While adjudicating this matter would settle the controversy regarding the scope of insurance coverage issued by Penn-Star to Defendants, it fails to settle the ultimate controversy between the parties, which is ongoing in state court. See *Travelers Indem. Co. v. Bowling Green Prof'l Assocs.*, PLC, 495 F.3d 266, 272 (6th Cir. 2007). Factoring in the heavily factual analysis required to adjudicate, this court should decline to exercise its discretion.

### 2) WHETHER THE DECLARATORY JUDGMENT ACTION WOULD SERVE A USEFUL PURPOSE IN CLARIFYING THE LEGAL RELATIONS AT ISSUE.

The second factor, whether the District Court's judgment would clarify the legal relations at issue, is closely related to the first factor and is often considered in connection with it. *Flowers*, 513 F.3d at 556-57. Again, the Court in *Flowers*, pointed out the Sixth Circuit split in considering this factor:

> a split has developed in our precedent concerning whether the district court's decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action. *Compare Prewitt*, 208 F. App'x at 397 ("This Court has held that declaratory relief was a proper remedy in cases where the declaratory action would clarify *only* the legal relationship between the insured and the insurer, and would not clarify the legal relationships in the state action."), *Northland*, 327 F.3d at 454, *Green*, 825 F.2d at 1066, *and Odom*, 799 F.2d at 250 n.1, *with Travelers*, 495 F.3d at 272, *Abex*, 161 F. App'x at 565, *and Bituminous*, 373 F.3d at 814 ("[A]lthough a declaratory judgment would clarify the legal relationship between Bituminous and J & L pursuant to the insurance contracts, the judgment would not clarify the legal relationship between Shields and J & L in the underlying state action."). We find the former line of precedent to be more persuasive than the latter. The requirement that the judgment clarify the legal relationships of the parties is based upon our desire for the declaratory judgment to provide a final resolution of the discrete dispute presented. While the parties may have other tortious or contractual relationships to clarify in state court, our concern in considering the second *Grand Trunk* factor in such cases is with the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer. Thus, we focus only on whether a federal declaratory judgment will clarify the legal relationships presented to the district court.

*Flowers*, 513 F.3d at 557. The previous courts having to make this same determination have found

that a declaratory judgment would clarify the legal relationship between the insurer and the insured pursuant to the applicable insurance policy, but such a judgment would not clarify the legal relationship between the parties in the State Court Lawsuit. *Travelers Indem. Co.*, 495 F.3d at 272 (citing *Bituminous Cas. Corp.*, 373 F.3d at 814; *see also Allstate Ins. Co. v. Mercier,* 913 F.2d 273, 275 (6th Cir. 1990) (first two of five factors not met in a situation in which the related state court litigation was not an action against the insured in which the insurer was a party), *abrogated on other grounds by Wilton*, 515 U.S. at 289-90). This perspective aligns with the present case. In making a declaratory judgment, the relationship between Penn-Star and Defendants is clarified, but to do so would require this Court to determine the employment relationship between Joseph Richter, Jr. and Defendants, as discussed *supra*. "A declaratory action does not serve a 'useful purpose' when insurance coverage questions can only be resolved based on facts yet to be determined in the state court[]." *Renou*, 32 F. Supp. 3d at 866-67 (quoting *Bituminous Cas. Corp.*, 236 F. Supp. 2d at 744). Although the Estate of Joseph Richter, Jr. is a party to this action, determining the declaratory judgment sought by Penn-Star would not provide any clarity to the relationship between Joseph Richter, Jr and the Defendants. Moreover, this declaratory judgment would not provide any clarity on the relationship between the Defendants, such as apportionment of liability.

Additionally, such a District Court's decision could create confusion about the resolution of those issues. The State Court Lawsuit would still need to determine whether the Defendants are liable to the Estate of Joseph Richter, Jr. and such a determination will require determining the employment relationship, if any, between the parties, discussed *supra*. See *Bituminous Cas. Corp.*, 373 F.3d at 814. This Court should follow the line of cases in finding that a declaratory judgment would not serve a useful purpose in clarifying the legal relationship between the parties in the State

Court Lawsuit and decline to exercise its discretion.

## 3) WHETHER THE DECLARATORY REMEDY IS BEING USED MERELY FOR THE PURPOSE OF "PROCEDURAL FENCING" OR "TO PROVIDE AN ARENA FOR A RACE FOR RES JUDICATA".

The State Court Lawsuit was filed on November 3, 2023, and this action was filed December 4, 2023. A plaintiff is generally given the benefit of the doubt when its claim is filed after the State Court Lawsuit. *Flowers*, 513 F.3d at 558 (citing *Bituminous*, 373 F.3d at 814 and *Northland*, 327 F.3d at 454). While the choice to file in federal court as opposed to the state court with the pending State Court Lawsuit seems like "procedural fencing" or "to provide an arena for a race for res judicata," there are no facts to show that is present in this case.

## 4) WHETHER THE USE OF A DECLARATORY ACTION WOULD INCREASE THE FRICTION BETWEEN OUR FEDERAL AND STATE COURTS AND IMPROPERLY ENCROACH ON STATE JURISDICTION.

The friction between federal and state courts and improper encroachment on state jurisdiction is referred to as "gratuitous interference" and described as follows:

> The Supreme Court has cautioned that "where another suit, involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed." *Wilton,* 515 U.S. at 283 (quoting *Brillhart,* 316 U.S. at 495). Here, there is a very real risk that a declaratory judgment by this Court might be decided differently than if the insurance coverage dispute were resolved by the state court which has the full factual record before it. Furthermore, the matter before this Court presents no issues of federal law and Allstate has an alternative means to obtain the precise relief it requests here in the Macomb County Circuit Court.

> For all of the foregoing reasons, guided by the Supreme Court's admonishment against "gratuitous interference" with a state court's action and in the interests of federalism and comity, this Court finds that the scales tip in favor of declining to exercise jurisdiction over Allstate's Complaint for Declaratory Relief.

*Allstate Ins. Co. v. Renou*, 32 F. Supp. 3d 856, 869 (E.D. Mich. 2014). In *Scottsdale*, the Court recognized three additional factors that bear on whether a declaratory action would increase friction between federal and state courts: (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action. *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 271 (6th Cir. 2007)(citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)).

The *Mercier* court discussed how a court should not be required to decide "rights and other legal relations" in a vacuum. *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 278 (6th Cir. 1990). That court found that the language of the policy exclusions is broad, but the insuring language is also broad, and we cannot say with certainty that those exclusions preclude a finding of coverage in the present case. *Id.* The Court pointed out that without any factual record, there is a real possibility that the district court's declaration of no coverage would conflict with a state court's determination of the coverage question after being informed of the facts. *Id.* The identical facts and reasoning are evident in this matter.

The Court in *Bituminous*, highlighted that the declaratory judgment case was filed pursuant to the federal courts' diversity jurisdiction and neither federal common law nor federal statutory law apply to the substantive issues of the case. *Bituminous*, 373 F.3d at 816. That court found that the state courts were in a better position to evaluate the factual issues because they rested solely on state law with which the state courts are better acquainted. *Id.* Additionally, it found that resolution of the declaratory judgment action required consideration of two undetermined

questions of state law and did not involve the application of any federal law. *Id.* The Court in *Omaha Property* also emphasized that the states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation. *Omaha Property & Casualty Ins. Co. v. Johnson*, 923 F.2d 446, 448 (citing *Mercier*, 913 F.2d at 279).

As previously discussed herein, the entire determination of the scope of the Insurance Policy will rest on intensive factual determinations and the application of purely state law. The State Court Lawsuit was initiated over two months ago and will require adjudication of related factual matters as the case progresses. There are no relevant federal common law or statutory law that would support a resolution of the declaratory judgment action. This factor heavily favors declining the exercise of discretion.

## 5) WHETHER THERE IS AN ALTERNATIVE REMEDY THAT IS BETTER OR MORE EFFECTIVE.

The final factor to consider is whether there is an alternative remedy that is better or more effective. For the federal courts to preempt the right of the state court to rule on a previously undetermined question of state law, more must be present than the desire of the insurance company to avoid the possibility of an unfavorable ruling in state court by convincing the federal court to rule first. *Omaha Property & Casualty Ins. Co.*, 923 F.2d at 448.

Kentucky does provide a procedure for a declaration of rights. Ky. Rev. St. § 418.040 ("In any action in a court of record of this commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights . . . and the court may make a binding declaration of rights . . . ."). The Court in *Bituminous* analogously found that the declaratory action could have presented its case to the same court that will decide

the underlying tort action. *Bituminous*, 373 F.3d at 816. That court reasoned that since the issues presented involve questions of state law only, the state court is also in a superior position to resolve the case. *Id.* (citing *Mercier*, 913 F.2d at 278-79). It additionally reasoned that a superior alternative remedy exists in the form of an indemnity action filed at the conclusion of the underlying state action. *Id.* (citing *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 462-63 (6th Cir. 1986). Again, all the same facts and reasoning apply to the case at hand. As was found in the analogous cases, the better alternative venue is the state court where the State Court Lawsuit is pending to ensure uniformity in adjudication and judicial efficiency in the application of state law, insurance law, and factual determinations. As such, this factor heavily favors that this court decline to exercise its discretion to consider this matter and dismiss this case without prejudice.

## Conclusion

In conclusion, guided by the discretionary nature of the Declaratory Judgment Act and the analytical framework provided by the United States Supreme Court and the Sixth Circuit, this Court should find it appropriate to decline jurisdiction over Penn-Star Insurance Company's Complaint for Declaratory Judgment. The intricate factual determinations intertwined with state law issues, the ongoing nature of the state court proceedings, and the absence of federal law issues necessitate a judicious exercise of discretion. With due regard for the availability of alternative remedies within the state court system and the potential for a more informed and comprehensive resolution of the dispute therein, this Court is encouraged to conclude that declining jurisdiction aligns with principles of judicial restraint and efficiency in dispute resolution. Therefore, in the interest of federal-state relations and judicial economy, Defendants, ARAL, INC., d/b/a THE BRASS BULL, ARMINA LEE AND ROGER PETERSEN moves this court to decline to exercise

2:19-cv-00166-WOB-CJS

its discretion to consider this matter under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), dismiss this case without prejudice, and order that this case proceed with a declaratory judgment action in the state court.

Respectfully submitted,

/s/ MARGO L. GRUBBS
MARGO L. GRUBBS, ESQ. (KBA # 27515)
Grubbs & Landry, PLLC
334 Beechwood Road, Suite 503
Ft. Mitchell, KY 41017
Ph: 859-341-2500
Fax: 859-341-2344
margo@grubbslaw.com

/s/ THOMAS L. ROUSE
THOMAS L. ROUSE, ESQ. (KBA # 60330)
334 Beechwood Road, Suite 550
Ft. Mitchell, KY 41017
Ph: 859-393-3234
tom@thomasrouselaw.com

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was electronically served via email on this 19th day of January 2024, upon the following:

James P. Nolan, II
Rolfes Henry Co., LPA
18 W. 9th Street
Cincinnati, Ohio 45202
T: (513) 579-0080
jnolan@rolfeshenry.com
mcraven@rolfeshenry.com
*Attorneys for Plaintiff Penn-Star*

2:19-cv-00166-WOB-CJS

Randy J. Blankenship
C. Ed Massey
Blankenship Massey & Associates, PLLC
504 Erlanger Road
Erlanger, KY 41018
Ph: 859-426-9000
Fax: 859-426-9001
rblankenship@nkylawyers.com
cedmassey@nkylawyers.com
*Attorneys for Defendant, Lori Richter,
Administratrix of the Estate of Joseph Richter, Jr.*

/s/ MARGO L. GRUBBS
MARGO L. GRUBBS