UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| PENN-STAR INSURANCE COMPANY, ) ) ) | |
| ) | Civil Action No. 2: 23-166-DCR |
| Plaintiff, ) ) ) | |
| V. ) ) | |
| ) | **MEMORANDUM OPINION** |
| ARAL, INC. d/b/a THE BRASS BULL, ) et al., ) ) | **AND ORDER** |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Penn-Star Insurance Company ("Penn-Star") filed this action seeking a judgment declaring that it does not owe a duty to defend or indemnify Defendants Aral, Inc., Armina Lee, or Roger Peterson (collectively, "The Brass Bull")[1] in an underlying state claim ("the State Court Action") currently being litigated in Kentucky's Campbell Circuit Court.[2] [*See* Record No. 1.] The Brass Bull has moved to dismiss this action, arguing that the factors set forth in *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984), counsel against the exercise of jurisdiction. [Record No. 11] However, for the reasons outlined below, the motion to dismiss will be denied.

---

[1] The Brass Bull is an adult entertainment establishment, located in Newport, Kentucky.

[2] *See Richter v. Aral, Inc.*, No. 23-CI-00984 (Campbell Cir. Ct. filed Nov. 3, 2023).

- 1 -

**I.**

The State Court Action alleges that, on December 3, 2022, Joseph Richter, Jr., was escorting a group of patrons out of The Brass Bull when one of the individuals shot and killed him. [Record No. 1-7] The Administratrix of Richter's estate brought suit against The Brass Bull and its owners, Armina Lee and Roger Peterson. [*Id.*] At the time of the incident, The Brass Bull had an active commercial general liability insurance policy ("the Policy") issued by Penn-Star. [Record No. 1-6] Penn-Star has been defending The Brass Bull in the State Court Action pursuant to a complete reservation of rights. Penn-Star filed this action seeking a judgment declaring that Penn-Star owes no duty to defend or indemnify the defendants, arguing that the Policy's terms expressly exclude coverage for the type of conduct which led to the State Court Action. [Record No. 1, ¶ 6]

The defendants have urged this Court not to exercise jurisdiction over Penn-Star's Complaint, suggesting that it would require a "comprehensive examination" of the underlying facts and that there are alternative remedies available within the state court system. [Record Nos. 11, 18] They also suggest that the principles of judicial efficiency and the interests of federal-state relations caution against this Court exercising discretionary jurisdiction over this matter. [*Id.*]

**II.**

"Exercise of jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) is not mandatory." *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942)). District courts are afforded "substantial discretion" in this regard. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546,

554 (6th Cir. 2008). District courts apply the five-factor test set forth in *Grand Trunk* to determine whether the exercise of federal jurisdiction is appropriate. These factors include:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

746 F.2d at 326 (internal quotation marks omitted). The fourth factor has been further broken down into three sub-factors:

> (1) Whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019) (quoting *Flowers*, 513 F.3d at 560).

### A.

The first two factors often overlap substantially and can be analyzed together. *See id.* at 397. Two lines of precedent have developed regarding these first two factors in the context of insurance company declaratory judgment actions to determine policy liability. *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 760 (6th Cir. 2014) (citing *Flowers*, 513 F.3d at 555). "One . . . holds that these two factors relate to whether the declaratory judgment would settle the *underlying* state-court controversy—that is, the tort action brought by the injured party against the insured—or would at least clarify the legal relationship between the parties in the underlying state-court controversy." *Id.* (emphasis in original) (citing *Flowers*, 513 F.3d at

555-58). "The other line of cases directs the district court to focus on the controversy between the parties in the declaratory-judgment action—that is, between the insurer and the insured." *Id.* (citing *Flowers*, 513 F.3d at 555-58).

This matter falls squarely within the second category. Penn-Star is not a party to the State Court Action and resolving the dispute over Penn-Star's duty to defend or indemnify The Brass Bull will not impact the questions of fact necessary to resolve the State Court Action. The defendants' assertion that resolution of this claim calls for "an intense factual determination" is unsupported. They only highlight this by emphasizing the alleged importance of the victim's employment status. [*See* Record No. 11, p. 6] That will doubtless be an important question of fact in the State Court Action, but it is of less importance here because the policy provisions control regardless of one's employment status. [*E.g.*, Record No. 1-6, pp. 24–40, 62, 67] The question before this Court is a purely legal one. *See Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2010) ("It is well settled that the proper interpretation of insurance contracts generally is a matter of law to be decided by a court; . . . ."). And because answering that question would resolve the matter before the Court promptly, the first two factors favor the discretionary exercise of jurisdiction.

**B.**

The third factor looks to the motivation of the federal plaintiff and asks whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata. "'Procedural fencing' refers to 'a range of tactics that courts regard as unfair or unseemly,' including selecting a forum to start a race for res judicata." *Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co.*, 29 F.4th 792, 797 (6th Cir. 2022)

(quoting *Hoey*, 773 F.3d at 761). This third factor "usually does not weigh heavily in the analysis." *Cole's Place*, 936 F.3d at 399. And where there is no evidence of procedural fencing, this factor is often found to be neutral. *Id.*

Penn-Star denies any such motive and The Brass Bull concedes that "there are no facts to show [procedural fencing] is present in this case." [Record No. 11, p. 9] Accordingly, the Court views this factor neutrally.

### C.

The fourth factor "reflect[s] concerns about principles of federalism." *Hoey*, 773 F.3d at 761. It asks the Court to determine "whether accepting jurisdiction would increase friction between federal and state courts." *Flowers*, 513 F.3d at 559. This factor is broken into three subfactors, the first of which "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Id.* at 560 ("In the context of actions seeking a declaration of the scope of insurance coverage, we have recognized that such questions can sometimes be resolved as a matter of law and do not require factual findings by a state court."). The second subfactor asks whether the state trial court is in a better position to evaluate those factual issues. But as previously discussed, the Court has no basis to believe that additional factual findings are required to resolve this dispute.

The third subfactor looks to whether any of the underlying issues implicate important matters of state law and/or public policy. "The states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Bituminous*, 373 F.3d at 815. The Sixth

Circuit has recognized that insurance policy interpretation raises "questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Id.* It has also made clear that the fundamental issues best left to state courts are not always implicated when a federal court applies state law to the interpretation of an insurance contract. *See Flowers*, 513 F.3d at 561 (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)). But even if this one subfactor were to caution against exercising jurisdiction, it is only one of three subfactors to be considered. In its totality, the fourth *Grand Trunk* factor does not counsel against exercising jurisdiction.

### D.

The final factor asks whether there is an alternative remedy which is better or more effective. Insurers may raise declaratory judgment claims in state court pursuant to KRS § 418.040, as well as indemnity actions following the conclusion of underlying state court actions. *See Flowers*, 513 F.3d at 562. But the availability of such alternatives does not necessarily make them *better* or *more effective* than federal declaratory actions. The Court's review of this factor "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Id.*

An insurers duty to defend is broader than its duty to indemnify. *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 280 (Ky. 1991). But "*neither* duty arises unless the claim against the insured falls within the policy coverage." *Id.* at 283 (Leibson, J., concurring in part) (emphasis in original). A state indemnity action filed at the conclusion of state proceedings would not offer a timely resolution to the question of Penn-Star's duty to defend. *See Flowers*, 513 F.3d at 562 ("Such a delayed alternative would be

worse, not better, than seeking a federal declaratory judgment."). But a state declaratory judgment claim would have the same effect as a judgment from this Court but with the added benefit of judicial efficiency. *See Flowers*, 513 F.3d at 562 (noting that a state court claim could potentially be resolved in a combined action by the same judge). And if the judgment is granted by either court, the matter of indemnity is likewise resolved.

The Brass Bull also suggests that exercising jurisdiction would be improper because it would "preempt the right of the state court to rule on a previously undetermined question of state law, . . . ." [Record No. 11] But the defendants make no effort to identify what this alleged undetermined question of state law might be. Even if they had, this Court would not be "preempting" state courts; a federal district court's interpretation of state law is not binding. *See Guar. Trust Co. v. York*, 326 U.S. 99, 108–09 (1945) (noting that a federal court adjudicating a state law claim is, "in effect, only another court of the State"); *Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 177 (1940) ("The highest state court is the final authority on state law."). And where Kentucky's courts have already provided "clear guidance as to the resolution of the legal issue," the federal forum is not inherently inferior. *Flowers*, 513 F.3d at 562. While judicial efficiency counsels against exercising jurisdiction, it does not weigh so heavily as to tip the scales one way or the other overall.

### E.

"[The Sixth Circuit] has 'never assigned weights to the *Grand Trunk* factors when considered in the abstract' and the factors are not always considered equally." *Cardinal Health*, 29 F.4th at 797 (quoting *Hoey*, 773 F.3d at 759). The factors "direct the district court to consider three things: efficiency, fairness, and federalism." *Hoey*, 773 F.3d at 759.

- 8 -

In this case, factors one, two, and four point towards exercising jurisdiction. The third factor is neutral and the fifth factor counsels against exercising jurisdiction. Viewing the factors in the appropriate context, and consistent with the substantial discretion conferred upon this Court under the Declaratory Judgment Act, the undersigned concludes that exercising jurisdiction over this action is appropriate.

### III.

Based upon the foregoing analysis and discussion, it is hereby

**ORDERED** that the defendants' motion to dismiss [Record No. 11] is **DENIED**.

Dated: March 7, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky