UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| PENN-STAR INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2: 23-166-DCR |
| V. | ) ) | |
| ARAL, INC., d/b/a THE BRASS BULL, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

Plaintiff Penn-Star Insurance Company ("Penn-Star") has filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). [Record No. 24] It seeks a declaration that it does not owe a duty to defend or indemnify Defendants Aral, Inc., doing business as "The Brass Bull",[1] Armina Lee, or Roger Peterson in an underlying state claim ("the State Court Action") currently being litigated in Kentucky's Campbell Circuit Court.[2] The motion will be granted for the reasons set forth below.

## I. Background

The State Court Action contains allegations that, on December 3, 2022, Joseph Richter, Jr., was escorting a group of patrons out of The Brass Bull when one of the individuals shot and killed him. [Record No. 1-7] The Administratrix of Richter's estate—his mother, Lori Richter—sued The Brass Bull and its owners, Armina Lee and Roger Peterson. [*Id.*] At the

---

[1]     The Brass Bull is an adult entertainment establishment, located in Newport, Kentucky.

[2]     *See Richter v. Aral, Inc.*, No. 23-CI-00984 (Campbell Cir. Ct., filed Nov. 3, 2023).

- 1 -

time of the incident, The Brass Bull had an active commercial general liability insurance policy ("the Policy") issued by Penn-Star.[3]  [Record No. 1-6]  Upon being notified of the State Court Action, Penn-Star agreed to defend The Brass Bull under a complete reservation of rights, while simultaneously seeking a declaratory judgment from this Court to determine whether it has a duty to defend and indemnify the establishment.  [*See* Record No. 1.]

Penn-Star filed the instant Motion for Judgment on the Pleadings on April 16, 2024.  It argues that exclusions in the Policy unambiguously preclude coverage for the claims asserted in the underlying lawsuit.  [*See* Record No. 24.]  However, the defendants claim that the policy language is ambiguous and overbroad, that the exclusions render the coverage illusory, and that the Firearms Exclusion is invalid as against Kentucky Public Policy.  [*See* Record Nos. 27, 28.]

## II.  Policy Provisions

Subject to certain exclusions, the Policy at issue provides coverage for damages because of "bodily injury" resulting from an "occurrence."[4]  [Record No. 1-6, p. 24] The Policy also imposes on Penn-Star a duty to "defend the insured against any 'suit' seeking those damages."  [*Id.*]

---

[3]    Penn-Star's proposed Order incorrectly identifies the number associated with the Policy. [Record No. 24-1] (identifying it as "Policy No. PVA0303646" rather than Policy No. PAV0361998, which appears on the Policy itself).

[4]    The Policy notes that "Damages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'" [Record No. 1-6, p. 24]

## A. Assault or Battery Exclusion

The "Assault or Battery Exclusion." is the first Policy provision at issue. [*Id.* at 40] In relevant part, it states:

A. This insurance does not apply to "bodily injury" . . . arising out of an "assault" or "battery" that occurs in, on, near or away from the premises shown in the Schedule above, whether or not:

1. Caused by, at the instigation of, or with the direct or indirect involvement of an insured, an insured's "employee", subcontractor, "temporary worker", volunteer worker, patron or other person in, on, near or away from the premises shown in the Schedule above; or

2. Caused by or arising out of an insured's failure to properly supervise or keep an insured's premises in a safe condition; or

3. Caused by or arising out of any insured's act or omission in connection with the prevention, suppression, or failure to warn of the "assault" or "battery", including but not limited to, negligent hiring, training or supervision.

4. Caused by or arising out of negligent, reckless, or wanton conduct by an insured, an insured's employees, patrons or other persons.

B. For purposes of this endorsement, the following definitions are added:

1. "Assault" means any intentional act, or attempted act or threat to inflict injury to another, including any conduct that would reasonably place another in apprehension of injury, including but not limited to physical injury, intimidation, verbal abuse, and any threatened harmful or offensive contact between two (2) or more persons.
2. "Battery" means the intentional or reckless use of force, including a physical altercation or dispute between persons, or offensive touching against another, resulting in injury, whether or not the actual injury inflicted is intended or expected. The use of force includes, but it not limited to the use of a weapon.

[*Id.*] It is uncontested that the referenced "premises shown in the Schedule" is that of The Brass Bull.

- 3 -

**B. Firearms Exclusion**

The second Policy provision at issue is the exclusion relating to "Firearms and Other Weapons" (the "Firearms Exclusion"). [*Id.* at 67]  In relevant part, it states:

This insurance does not apply to "bodily injury" . . . arising out of the use, sale, or demonstration of firearms or other weapons by any person, whether or not caused:

1. By, at the instigation of, or with the direct or indirect involvement of you or your employees, patrons or other persons in, on, near or away from your premises;
2. By or arising out of, your failure to properly supervise or keep your premises in a safe condition;
3. By or arising out of, any insured's act or omission in connection with the prevention, suppression or failure to warn, including but not limited to negligent hiring, training and/or supervision; or
4. By or arising out of, negligent, reckless or wanton conduct by you, your employees, patrons or other persons.

[*Id.*]

**III.  Legal Standard**

A motion for judgment on the pleadings under Rule 12(c) is evaluated using the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Oakland Tactical Supply, LLC v. Howell Township*, 103 F.4th 1186, 1191 (6th Cir. 2024) (citing *Warrior Sports, Inc. v. NCAA*, 623 F.3d 281, 284 (6th Cir. 2010)).  "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *Id.* at 1191–92 (quoting *Warrior Sports, Inc.*, 623 F.3d at 284).

In the context of insurance policy interpretation, the Court must first determine if the policy language is clear and unambiguous.  *See Ky. State Univ. v. Darwin Nat'l Assurance Co.*, 677 S.W.3d 294, 300 (Ky. 2023) (quoting *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002) ("When 'the terms of an insurance policy are

- 4 -

clear and unambiguous, the policy will be enforced as written.'"). Ambiguity exists where a reasonable person would find the challenged policy provision "susceptible to different or inconsistent interpretations." *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010). Ambiguous policy language is generally construed in favor of the insured. *Thomas v. State Farm Fire & Cas. Co.*, 626 S.W.3d 504, 507 (Ky. 2021). In the absence of ambiguity, the reviewing court looks to "the four corners of [the] instrument" to ascertain the parties' intention. *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000).

Under Kentucky law, the burden of establishing coverage under an insurance policy rests with the insured, *see Est. of Bramble v. Greenwich Ins. Co.*, 671 S.W.3d 347, 352 (Ky. 2023), the insurer bears the burden of establishing that an exclusion bars coverage, *Pasha v. Commonwealth Land Title Ins. Co.*, No. 2013-CA-848, 2014 WL 5510931, at *3 (Ky. App. Oct. 31, 2014), and the applicability of a policy exclusion is a question of law for the court to decide, *Bituminous Cas. Corp. v. Kenway Contracting, Inc.,* 240 S.W.3d 633, 638 (Ky. 2007).

### III. Analysis

The defendants raise several arguments relating to the Policy's overall coverage as well as the inapplicability of the exclusions. Because they have the initial burden of establishing that the Policy provides coverage for the claims asserted, the Court begins with those arguments.[5] *See Estate of Bramble*, 671 S.W.3d at 352.

---

[5]    The Policy's coverage is limited to the following areas: "Bodily Injury and Property Damage," "Personal and Advertising Injury," and "Medical Payments." [Record No. 1-6, pp. 24–31] The Policy's coverage for "Personal and Advertising Injury" and "Medical Payments" are not applicable in this action, so the Court's focus is on coverage arising under the "Bodily Injury and Property Damage" provision. [*See id.* at 31, 38.]

### A.  Policy Coverage

### 1.  Scope of the State Court Action

The defendants first argue that the policy exclusions relate exclusively to claims of "bodily injury," while noting that the State Court Action encompasses claims not limited to bodily injury.  [Record No. 27, p. 3]  Count One of the State Court Action seeks damages relating to the "physical pain and suffering" and the "emotional pain and suffering" experienced by Joseph Richter Jr. prior to his death.  [Record No. 1-7, ¶ 30]  Count Two seeks damages for the loss of income to the decedent's estate and family.[6]

The defendants note that the Policy defines "bodily injury" as encompassing "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  [Record No. 1-6, p. 36]  The Policy's definition "does not encompass mental anguish and suffering."  [Record No. 27, p. 3]  Therefore, the defendants reason that coverage falling outside the defined scope of "bodily injury" is not barred by the Policy's exclusions. But this argument misses the mark.  While noting that these claims fall outside the Policy's definition of "bodily injury," the onus remains on the defendants to demonstrate how such claims are otherwise covered.[7]  It has not done so.

### 2. Reasonable Expectations and Illusory Coverage

---

[6]     Counts Three and Four are for punitive damages and undercapitalization.  [Record No. 1-7, ¶¶ 37, 40]

[7]     The Policy provides that "Damages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'"  [Record No. 1-6, p. 24]  This captures Count Two of the State Court Action.

Next, the defendants raise arguments under the reasonable expectations doctrine and doctrine of illusory coverage, but neither is applicable. The reasonable expectations doctrine applies only when an insurance policy contains ambiguous terms. *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003). "Only actual ambiguities, not fanciful ones, will trigger application of the doctrine." *Id.* The defendants have not identified any ambiguous text in the Policy. Instead, they argue that the coverage limitations and exclusions contradict the reasonable expectations of someone purchasing "comprehensive protection" for an "adult entertainment" establishment. [Record No. 27, p. 6] This argument misconstrues the reasonable expectations doctrine.

"Illusory coverage applies when an insurer's interpretation of a contract term would deny the insured 'most if not all of a promised benefit.'" *Thomas*, 626 S.W.3d at 508 (quoting *Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 128 (Ky. App. 2012)). The defendants have not demonstrated that to be the case. The Policy provides The Brass Bull with considerable coverage subject to express unambiguous limitations.

The Brass Bull alleges that "assault, battery, firearm use, and contributions to intoxication" are "the very risks inherent to the insured's business operations." [Record No. 27, p. 7] If that is the case, it was The Brass Bull's obligation to procure coverage that contemplated such risks. It is an insurance company's prerogative to condition policy coverage on as many exclusions as it deems necessary, and the insured's obligation to ensure the coverage adequately suits its needs. *See Heltsley v. Life & Cas. Ins. Co.*, 185 S.W.2d 673, 675 (1945); *Nationwide Mut. Ins. Co. v. Hatfield*, 122 S.W.3d 36, 51 (Ky. 2003) (Cooper, J., dissenting) (noting that premiums are premised on the scope of coverage and a policy's

exclusions and that "coverage is not 'illusory'" when "the insured simply gets what was paid for"). The doctrine of illusory coverage is inapplicable here.

### B.  The Assault or Battery Exclusion

Next, the defendants argue that the Policy's Assault or Battery Exclusion is inapplicable because assault and battery require specific intent and no such intent has been alleged. [Record No. 27, p. 8] This argument presupposes that "assault" and "battery" derive their meaning from Kentucky statute or common law, which is not the case. Both terms are defined within the policy and neither requires specific intent.

The Policy provides that coverage does not apply to "bodily injury" arising out of an "assault" or "battery" occurring on or near the insured premises. The Policy's definition of "battery" encompasses the "intentional or reckless use of force, including a physical altercation or dispute between persons . . . resulting in injury, whether or not the actual injury inflicted is intended or expected. The use of force includes, but it not limited to the use of a weapon." [Record No. 1-6, p. 40]

The allegations in the underlying lawsuit claim that Joseph Richter Jr. was shot and killed by Robert McKay, a customer of The Brass Bull. This incident falls squarely within the Policy's Assault or Battery Exclusion. The shooting was an intentional or reckless act that resulted in bodily injury, and the use of a firearm constitutes the use of force as contemplated by the exclusion's definition of "battery." Thus, the Assault or Battery Exclusion applies to preclude coverage for the claims asserted in the underlying lawsuit.

### C. The Firearms Exclusion

The Brass Bull also argues that the Firearms Exclusion is overbroad and contrary to Kentucky public policy. [Record No. 27, p. 8] It asserts that the exclusion is so overly broad

that it could be used to negate coverage "where a glass bottle accidentally nicks a patron" by considering such accident the "use of a weapon." [*Id.*]  But that scenario is not before the Court and a policy is not rendered overly broad simply because a clever hypothetical identifies an unreasonable interpretation that could nonetheless be argued.

The Firearms Exclusion states that the insurance does not apply to bodily injury "arising out of the use . . . of firearms . . . by any person, whether or not caused . . . [b]y, at the instigation of, or with the direct or indirect involvement of . . . patrons or other persons in, on, near or away from your premises."[8]  [Record No. 1-6, p. 67]  The underlying lawsuit involves a shooting incident where a patron of The Brass Bull shot and killed Joseph Richter Jr.  Under the plain language of the Firearms Exclusion, any bodily injury arising out of the use of firearms is excluded from coverage.  The policy language is unambiguous and should be enforced as written.  *Kemper Nat'l Ins. Cos.*, 82 S.W.3d at 873.

The defendants' argument relating to Kentucky public policy is without merit.  Just because "Kentucky has a public policy heavily in favor of freedom of firearms," does not mean that a private insurance company is required to indemnify lawful firearm uses within covered establishments.  Based on the clear and unambiguous language of the Policy, the Firearms Exclusion precludes coverage for the claims arising from the shooting of Joseph Richter Jr.

### D. Duty to Defend and Indemnify

Having determined that both the Assault or Battery Exclusion and the Firearms Exclusion preclude coverage for the claims arising from the shooting of Joseph Richter Jr., the

---

[8]     It also covers an insured's failure to supervise or maintain a safe premises; negligent hiring, training, or supervision of staff; and conduct arising out of negligent, reckless, or wanton conduct by patrons or other persons.  [Record No. 1-6, p. 67]

Court now addresses Penn-Star's duty to defend and indemnify The Brass Bull in the State Court Action. Under Kentucky law, the duty to defend is broader than the duty to indemnify. *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 280 (Ky. 1991). An insurer must defend any suit in which the language of the Complaint "potentially, possibly or might come within the coverage of the policy," regardless of the merit of the action. *Id.* at 279. However, when the allegations in the Complaint clearly fall within an exclusion to coverage, the insurer has no duty to defend. *Id.*

In this case, the allegations in the underlying lawsuit unambiguously fall within the Assault or Battery Exclusion and the Firearms Exclusion of the Policy. Since the exclusions apply, Penn-Star owes no duty to defend in the State Court Action. Consequently, Penn-Star also has no duty to indemnify for any judgment or settlement arising from the State Court Action, as the duty to indemnify cannot exist without the duty to defend. *See Lenning v. Com. Union Ins. Co.*, 250 F.3d 574, 581 (6th Cir. 2001) (citing *James Graham Brown Found., Inc.*, 814 S.W.2d at 280).

### IV. Conclusion

Based on the foregoing analysis and discussion, it is hereby **ORDERED** as follows:

1.      Plaintiff Penn-Star Insurance Company's Motion for Judgment on the Pleadings [Record No. 24] is **GRANTED**.

2.      Penn-Star Insurance Company owes neither indemnity nor defense to Defendants Aral, Inc., doing business as The Brass Bull, Armina Lee, or Roger Peterson, for the allegations raised in this matter or those at issue in *Richter v. Aral, Inc.*, No. 23-CI-00984 (Campbell Cir. Ct., filed Nov. 3, 2023).

Dated: July 15, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky